HENRY SPEN & CO., INC., Plaintiff,

v.

Melvin LAIRD, Secretary of the Department of Defense, et al., Defendants.

Civ. A. No. 50-73.

United States District Court,
District of Columbia.

Feb. 10, 1973.

Maurice J. Gilchrist, New York City, admitted pro hac vice, for plaintiff.

Robert Werdig, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM–ORDER

GASCH, District Judge.

This case came on for consideration on the plaintiff's verified complaint, its motions for a preliminary injunction and cross-motion for partial summary judgment, the defendant's motion for summary judgment, points and authorities and exhibits filed by both parties, and argument by counsel in open Court.

There is no dispute about the material facts in this case. Briefly, they are as follows. On April 21, 1972, the Defense Supply Agency, Defense Construction Supply Center (hereafter called agency) issued an invitation for bids on a contract for supply of certain items of lubrication maintenance equipment (IFB No. DSA700–72–B–2207). Bids were to be opened at 10:30 A.M., June 6, 1972. On June 2, Henry Spen & Co. (Spen), a New York corporation with a large portion of its business in government supply contracts,[1] submitted a bid in which it offered to supply 67 production units (items 1–4) at $6,000 per unit and a pre-production model with related testing and data (item 5) at a total price of $12,500.[2] At the time it compiled that bid, Spen was without current information from some of its suppliers; it arrived at its $6,000 figure for each production unit by using figures for components from a similar bid package compiled in 1968 and increasing that amount by 25 percent to allow for price increases since that time. On June 5, Spen reviewed its bid, partly in the light of more current information received from suppliers. Spen thereupon discovered that its bid was unduly low. In particular, it discovered that its per-unit figure for the production units did not include crating costs or costs of certain other components, and that it should be $7,982 per unit rather than $6,000 each. Regarding item 5, it found that the cost of the pre-production model to be delivered and labor costs for an additional 200 hours of needed testing were omitted; accordingly, it determined that its bid as to that item should be increased by $9,437 to a total of $21,937. At 5:44 that afternoon Spen dispatched a telegram, to be sent from the New York office of Western Union.[3] Although Western Union's records in Brooklyn, New York, show that the telegram was sent to the designated bid-opening location, the Western Union office in Columbus, Ohio, has no record of its being received there. Western Union has been unable to explain the transmission failure. When bids were opened on June 6, Spen's was the lowest of the four submitted. Because the Spen bid of $6,000 each on the production units seemed unusually low in comparison to bids submitted by the three other bidders and because of some misalignments of prices in the bid, the contracting officer called Spen, pursuant to a provision of the Armed Services Procurement Regulations (ASPR), 32 C.F.R. § 2.-406–1, to request verification of the bid. At that time the agency learned about the dispatch of the June 5 telegram and Spen discovered that the telegram had not been received.

Although both its June 2 bid and its bid as increased by the June 5 telegram were lower than any of the three other

---

1. Spen is currently involved in Chapter XI reorganization proceedings in New York, but that fact is relevant only to the motion for a preliminary injunction, which the decision herein renders moot.

2. The bid also included figures for items 6–17 but no correction was sought as to those, and they are not at issue here.

3. The defendants have not disputed Spen's statement that the telegram was delivered by telephone to the Brooklyn, New York, office of Western Union at 5:44 p. m. on June 5, 1972, and that in the normal course of handling it would have arrived before bid opening at the proper location. (See Affidavit of John J. Suplina and Exhibit I, attached to Plaintiff's Cross-Motion for Summary Judgment.)

bids submitted, Spen saw fit to protect itself from award of the contract to another bidder by filing a protest with the Comptroller General on July 10, 1972; in its protest it contended that it should be awarded the contract on the basis of its June 2 bid as corrected by the June 5 telegram. In the meantime, the agency's Contracting Officer was reviewing the matter, and on August 2 he determined that Spen had not made a mistake as to item 5 and so should not be permitted to increase its bid on that item, but that there was clear and convincing evidence that the per-unit bid of $6,000 for items 1–4, the 67 production units, was a mistake. Hence the agency was willing to allow correction of the price on items 1–4. Spen thereupon sought to withdraw its protest from the Comptroller General's office, with the exception of that portion concerned with item 5, the issue which the Contracting Officer had decided against Spen. The Comptroller General nevertheless considered the entire bid and issued an opinion on December 29, 1972 (No. B–176326), holding that there was no basis for allowing correction of any part of the June 2 bid, although the agency could properly permit Spen to withdraw the bid.

■■ Whether the Comptroller General had "jurisdiction" to decide the question which the protestant sought to withdraw from consideration on appeal is not at issue here. An affidavit by the Chief of the Procurement Division with the Defense Supply Agency states that the Agency has not felt itself bound by the Comptroller General in this matter but has simply been persuaded by his reasoning to change its position (See Defendants' Exhibit 1). It is clearly entitled to do so under case law of this Circuit. A. G. Schoonmaker Co., Inc., et al. v. Resor, 144 U.S.App.D.C. 250, 445 F.2d 726 (1971). Since the agency has been persuaded by the Comptroller General's opinion to change its position, it is essentially that opinion which is to be tested here. The standard of review is the normal one for agency action: this Court will not set aside the decision unless it finds it to be arbitrary or capricious. M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 231, 455 F.2d 1289, 1298 (1971).

■ At the outset it should be determined whether the June 5 telegram can qualify under the regulations as an effective late bid modification, an issue which plaintiff raised in the memorandum accompanying its Motion for Preliminary Injunction. According to ASPR §§ 2.303–4, a telegraphic bid modification received after bid opening and before award cannot be considered for award "regardless of the cause of the late receipt, including delays caused by the telegraph company, except for delays due to mishandling on the part of the government in its transmittal to the office designated in its invitation for bids. . . ."[4] It is clear to the Court that the June 5 telegram does not qualify as a late bid modification, and that the agency was thus correct in proceeding under the regulations governing mistakes in bids.

The applicable regulation is ASPR § 2.406–3, "Other Mistakes" (meaning mistakes other than "apparent clerical mistakes," which are governed by ASPR § 2.406–2). Subsection (3) of that regulation is as follows:

(3) Where the bidder requests permission to correct a mistake in his bid and clear and convincing evidence establishes both the existence of a mistake and the bid actually intended, a determination permitting the bidder to correct the mistake may be made; provided that, in the event such correction would result in displacing one or more lower bids, the determination shall not be made unless the existence of the mistake and the bid actually intended are ascertainable substantially from the invitation and the

___

4. See also Section 8 of SF–33A, "Solicitation Instructions and Conditions," which was mailed out with the IFB in question (Defendants' Exhibit 8).

bid itself. If the evidence is clear and convincing only as to the mistake, but not as to the intended bid, a determination permitting the bidder to withdraw his bid may be made.[5]

Since the Comptroller General determined that the evidence submitted by Spen regarding its original bid and its increased bid warranted allowing Spen to withdraw, he must have determined that there was clear and convincing evidence of mistake in the bid of June 2. Since the Comptroller General also determined that Spen should not be permitted to correct its June 2 bid, he must have made the determination, under the applicable regulation, that there was no clear and convincing evidence of Spen's actually intended bid.

It is clear from the record herein and from the argument by counsel in open Court that a crucial difference between the positions of the parties is whether the intent referred to in the phrase "actually intended bid" is to be determined as of the time the bidder submitted his original, allegedly mistaken, bid or as of bid opening. As discussed below, plaintiff contends that in the circumstances of this case only clear and convincing evidence of pre-bid-opening intent need be shown. The Comptroller General and the agency obviously believe it is the bidder's intent as of June 2 which must be established by clear and convincing evidence. The distinction which the Comptroller General makes between, correcting prices for items or "factors" originally considered by the bidder, and on the other hand, recalculating the bid on the basis of "factors not considered by the bidder until after the bid was prepared and submitted" probably serves to distinguish between cases in which it is possible to determine actual intent at the time the original bid was prepared and those in which it is not possible to do so. (Presumably there can be no clear and convincing evidence of intended price for a factor not even considered.) In the ordinary case, one in which an intent other than that asserted on the face of the original bid is alleged for the first time after bid opening, the Comptroller General's focus upon intent at the time the original bid was prepared and his distinction between corrections and recalculation make good sense.[6] The Court does not agree, then, with plaintiff's argument that the distinction in question is "premised upon [an] entirely improper and wholly subjective standard."[7]

However, this is not the ordinary case, and the question is whether, on the undisputed facts in this record, the Comptroller General's opinion, which was adopted by the agency, is arbitrary or capricious. The agency is bound by 10 U.S.C. § 2305(c) to make awards "by giving written notice to the responsible bidder whose bid conforms to the invitation and will be the most advantageous to the United States, price and other factors considered." It is undisputed that plaintiff's bid as increased by the June 5 telegram would still be the lowest of the four bids submitted. The only factor other than price which the defendants have mentioned as requiring the displacement of this low bid by the next lowest bid is the "preservation of

---

5. Since no lower bid would be displaced by Spen's bid as corrected in the June 5 telegram, the proviso requiring that the existence of the mistake and the bid actually intended be ascertainable "substantially from the invitation and the bid itself," obviously does not apply.

6. Neither does the Court question the validity in general of the Comptroller General's rule that "the degree of proof required to justify withdrawal of a bid before award is in no way comparable to that necessary to allow correction of an erroneous bid." 36 Comp.Gen. 441, 444 (1956), cited in B–176326, Dec. 29, 1972, Plaintiff's Exhibit D. However, in the circumstances of this case, as described below, the Court does not find that this rule provides a nonarbitrary ground for the Comptroller General's decision.

7. Plaintiff's Memorandum of Points and Authorities in Support of Its Cross-Motion for Partial Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment, at p. 19.

the integrity of the competitive bidding system." Defendants are, of course, relying on Superior Oil Co. v. Udall, 133 U.S.App.D.C. 198, 409 F.2d 1115 (1971), in which it was held that where the highest bidder for oil and gas leases which the government was offering for sale failed to sign his bid as required by the regulations, the leases should be sold to the next highest bidder. Even though this result was financially less advantageous to the government than rejecting all bids and starting over, the Court held that any other result would be "inequitable" to the second highest bidder and "damaging to the long range public interest in the integrity of the bidding process." 133 U.S.App.D.C. at 205, 409 F.2d at 1122. It based this conclusion on the fact that, by not signing its bid, Union Oil—the high bidder—gave itself the option of claiming the right to buy the leases (as it did) or claiming that it could not be bound because of the absence of any authorized signature. "It is not inconceivable," the Court observed, "that a high bidder in circumstances such as here who found he had made an improvident bid substantially higher than that of other bidders could well seek to exploit every arguable thesis to rid himself of the burden of what he concluded was an undesirable offer." 133 U.S.App.D.C. at 203, 409 F.2d at 1120. The agency would, of course, have no way of knowing whether the failure to sign the bid was an inadvertent omission or a tactical decision made in bad faith to gain an advantage over the other bidders.

The question for this Court is whether the integrity of the bidding process would be compromised by a determination that the telegram of June 5 is clear and convincing evidence of plaintiff's "actually intended bid" and, as such, forms the basis for permitting a bid correction pursuant to ASPR § 2.406–3(3). It is apparent that Spen had an option of sorts on June 9, when it learned that the government had not received its telegram of June 5, i. e., Spen could either let the matter drop or it could, as it did,

send a confirmation copy of the telegram as dispatched and claim it to be a bid correction. However, it is equally clear that Spen had no reason to believe, when it telephoned the telegram to the Brooklyn office of Western Union, that the telegram would not be received at the designated location before bid opening. The defendants have not disputed the assertion in plaintiff's Statement of Material Facts as to Which There Is No Genuine Issue that the telephonic delivery of the telegram to Western Union's New York office "was made in sufficient time for the telegram to have been received by defendants prior to the bid opening under normal transmission conditions." Neither have defendants asserted the existence of any fact that would have put Spen on notice that the telegram might not be received in Ohio. Thus, unlike the bidder in *Superior Oil*, Spen had unequivocally committed itself to the bid asserted in its June 5 telegram. In such a circumstance, it is difficult to see how the integrity of the bidding process is threatened by taking the telegram to be clear and convincing evidence of Spen's "actually intended bid," meaning its *bona fide* intent before bid opening as opposed to an intent formed after the other bids became known.

█ In short, the position of the Comptroller General, which has been adopted by the agency, seems clearly arbitrary and capricious in the light of the language and purposes of ASPR § 2.-406–3(3) and 10 U.S.C. § 2305(c). However, it must be reiterated that this Court is not passing on the validity in general of the principles which the Comptroller General has developed in connection with cases of asserted bid mistakes. The decision in the present action is strictly confined to these facts: the agency has found clear and convincing evidence of mistake; the assertion of the "actually intended bid" was made unequivocally before bid opening in circumstances which would lead the bidder reasonably to believe he would be bound by his asserted intent; and the bidder's

bid as corrected does not displace a lower bid.

As just indicated, a determination that there is clear and convincing evidence of mistake is one of the prerequisites to bid correction. It seems plain from the record that the agency and the Comptroller General found such evidence as to items 1–4, the 67 production units originally priced at $6,000 each. It is also clear from the record herein that the agency originally took the position that there was no clear and convincing evidence of mistake as to item 5. The reasoning of the Contracting Officer in support of this position was as follows:[8]

Although the telegram of 5 June 1972 establishes that Henry Spen intended to increase the total price of CLIN 0005 by $9,437, the evidence is not clear and convincing that the original bid of $12,500 on CLIN 0005 was in fact occasioned by a mistake. In paragraph 10 of the above-mentioned affidavit, Mr. Parker alleges that it was discovered on 5 June 1972 that the cost of the preproduction unit to be delivered and some 200 labor hours consumed in testing were omitted from the price of CLIN 0005. However, the first article is not required to be delivered to the Government as such (see paragraph (e) of Clause C27) and the 200 labor hours omitted from the price of CLIN 0005 is not otherwise explained or supported, except by comparing Exhibits H, I and J.[9]

Although the Comptroller General, referring to the bid as a whole, has held that there was sufficient evidence of mistake to permit a bid withdrawal, he nowhere reverses the agency's specific determination that there was no clear and convincing evidence of mistake as to item 5.[10] Moreover, by deciding the bid protest against Spen, the Comptroller General implicitly sustained the decision reached by the agency as to that portion of the bid. The Court finds nothing in the record which amounts to clear and convincing evidence of mistake as to item 5, and *a fortiori* it finds nothing to suggest that the decision not to permit correction as to item 5 was arbitrary or capricious.

Accordingly, it is by the Court this 10th day of February, 1973,

Ordered that defendants' motion for summary judgment be, and the same hereby is, denied; and it is further

Ordered that plaintiff's cross-motion for partial summary judgment be, and the same hereby is, granted in part; and it is therefore further

Ordered that, if plaintiff does not avail itself of its option to withdraw its bid submitted in response to IFB 700–72–B–2207, then defendants and their officers, servants, agents and employees be, and they hereby are, directed to consider for award on IFB 700–72–B–2207 the bid of the plaintiff set forth in plaintiff's bid submitted June 2, 1972, as corrected on items 1–4 by plaintiff's telegram dated June 5, 1972, annexed as

---

8. Exhibit B to the Complaint, ¶ 12.

9. Exhibit H is a worksheet showing the breakdowns of the $12,500 bid; Exhibit I shows the breakdown of the bid "as corrected"; and Exhibit J shows the itemized figures for the two bids lined up for purposes of comparison. All these were part of Spen's submission of July 10, 1972, to the Comptroller General, which makes up Exhibit A to the Complaint herein. Spen later submitted to the Comptroller General a supplemental affidavit by Stanley Parker, Spen's Sales and Marketing Manager, to the effect that the original figure for the running time tests was mistaken because Spen forgot to "add a factor of approximately 40% to 50% for running time tests." (Exhibit C to the Complaint.) In his opinion, the Comptroller General summarized the agency view on this as being that there was no objective evidence that it was an established industry practice to add such a factor. B–176326, at p. 3, Exhibit D to the Complaint.

10. Mistake as to items 1–4 would be sufficient to permit withdrawal of the bid, so the Court cannot infer from the Comptroller General's decision permitting Spen to withdraw its bid that he found evidence of mistake as to item 5 where the agency had found none.

Exhibit K to Exhibit A of the verified complaint; and it is further

Ordered that the defendants and their officers, servants, agents and employees be and they hereby are enjoined from awarding a contract upon or considering for award under IFB 700–72–B–2207 any other bid until the further application of the parties to the Court and until the further order of the Court upon such application.